IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| BASSIM MALIH,<br><br>    Petitioner,<br><br>v.<br><br>SCOTT LADWIG, New Orleans Field Office Director of Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY, Enforcement and Removal Operations; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>    Respondents. | No. 2:26-cv-02150-SHL-cgc |

**ORDER GRANTING PETITION**

On February 13, 2026, Petitioner Bassim Malih filed the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1.) Malih challenges his continued detention in the West Tennessee Detention Facility as an "arriving alien" without a bond hearing. (ECF No. 1-3 at PageID 16.) He seeks immediate release from Respondents' custody. (Id.) On February 13, the Court issued an order requiring Malih to supplement the Petition with additional facts and directing Respondents to respond. (ECF No. 5.) Malih filed his supplemental facts on February 16. (ECF No. 7.) On February 20, Respondents files their response. (ECF No. 10.) For the reasons explained below, Malih is entitled to immediate release, and the Petition is **GRANTED**.

**BACKGROUND**

Malih, a fifty-one-year-old native and citizen of Syria, is a member of the Druze religious minority. (ECF No. 7 at PageID 24.) According to Malih, members of this group "are systematically persecuted by the majority Muslim population," with no protection from the Syrian government. (Id. at PageID 25.) "When Mr. Malih was forty-seven years old, the Syrian

armed forces attempted to forcibly conscript him into military service against his will." (Id.) Malih was married with two young children in Syria, ages twelve and eight. (Id.) Facing conscription, he sought safety in the United States, arriving in July 2023. (Id.) Upon his arrival, he encountered immigration authorities and was released on his own recognizance. (Id.) Thereafter, he "timely filed a Form I-589, Application for Asylum, Withholding of Removal, and Convention Against Torture." (Id.) He was granted work authorization. (Id. at PageID 26.) Malih states that, for over two years, he "complied with all conditions of his release," "appeared for all scheduled check-ins with ICE," "maintained his residence in Memphis, Tennessee," and "obtained lawful employment at a gas station, where he worked consistently and reliably." (Id.) He has a "strong support network" provided by his cousin, living in Memphis. (Id.) There is no indication that he has any criminal history.

On November 18, 2025, during one such routine report to the ICE office, Malih was arrested. (Id. at PageID 27.) He has been detained at the West Tennessee Detention Facility ever since. (Id.) Since his detention, Malih has requested a bond hearing in immigration court. (ECF No. 10-2 at PageID 54–57.) However, the Immigration Judge ("IJ") denied his request, citing the recent Board of Immigration Appeals ("BIA") decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025). (Id.) The present Petition followed, the crux of which argues that Malih was detained without a bond hearing.

Indeed, under recently adopted guidance from DHS and ICE, Malih is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was declared ineligible to be released on bond. Until recently, however, most noncitizens in this situation were given bond hearings under a different provision, § 1226(a). See Godinez-Lopez v. Ladwig, No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025). Section 1226(a) allows

immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons.  For example, noncitizens with certain criminal records may not be released on bond.  8 U.S.C. § 1226(c).

Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for admission" who are "seeking admission."  "Applicants for admission" has been interpreted to mean recent arrivals, including those who have not been "physically present in the United States continuously" for the previous two years.  See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a).  Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.").  The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission."  And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status.  As a result, all undocumented immigrants awaiting removal are detained without a bond hearing.  This new

3

interpretation was later adopted by the BIA in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

Malih faces the risk of continued detention without a bond hearing. (ECF No. 1 at PageID 6.) His Petition alleges violations of Fifth Amendment due process, the Fourth Amendment protection against unreasonable seizures, and the Eighth Amendment prohibition on cruel and unusual punishment. (Id. at PageID 6–7.) He seeks his immediate release. (Id.)

In response, Respondents contend that the Fifth Circuit's recent opinion in Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), provides persuasive authority for denying the petition; that Malih should be treated for due process purposes as if stopped at the border; that no Fourth Amendment right was violated because his detention was reasonable; and that, if the Court finds that § 1226(a) applies to him, he should be granted a bond hearing and not immediately released. (ECF No. 10 at PageID 43–49.)

## ANALYSIS

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'" Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)). Malih challenges his detention without bond as violative of his constitutional rights. (ECF 1 at PageID 6–7.) The Court first interprets the statutes to determine whether §1225 or § 1226 is applicable, and then analyzes the due process claim.

I.     **Statutory Interpretation**

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)). Each word within a statute

4

must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" Kentucky v. Biden, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens"). Section 1225(b) requires mandatory detention, providing in relevant part:

> (b) Inspection of applicants for admission
> . . .
> (2) Inspection of other aliens
>     (A) In general
>         Subject to subparagraphs (B) and (C), in the case of an alien who is an <u>applicant</u> <u>for</u> <u>admission</u>, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien <u>shall</u> <u>be</u> <u>detained</u> for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). Under this section, all applicants for admission "shall be detained." Id. § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in relevant part:

> (a) Arrest, detention, and release
>     On a warrant issued by the Attorney General, an alien <u>may</u> <u>be</u> <u>arrested</u> <u>and</u> <u>detained</u> pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>     (1) <u>may</u> <u>continue</u> <u>to</u> <u>detain</u> the arrested alien; and
>     (2) <u>may</u> <u>release</u> the alien on—

5

>           (A)     bond of at least $1,500 with security approved by, and
>                   containing conditions prescribed by, the Attorney General .
>                   . . .

8 U.S.C. § 1226(a) (emphasis added). The exception in § 1226(c) prohibits releasing on bond a noncitizen found to be inadmissible, who also,

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

Id. § 1226(c)(1)(E)(ii). "Noncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an IJ." Lopez-Campos, 2025 WL 2496379, at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified). "The IJ evaluates whether there is a risk of nonappearance or danger to the community." Id. (citing Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Thus, except for those noncitizens with a record of certain criminal offenses, § 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[1]

Malih argues that ICE's new interpretation of § 1225(b)(2)(A) violates his rights under the Fourth, Fifth, and Eighth Amendments. (ECF No. 1 at PageID 6–7.) He argues that 8 U.S.C. § 1226(a) applies to his detention because he not an "arriving alien." (ECF No. 1-3 at PageID 16–17.) He argues that, because he entered the United States over two years ago and was "apprehended in the interior," he is not an "arriving alien" and thus § 1226(a) applies. (Id. at PageID 15.) For these reasons, he seeks his immediate release. (Id. at PageID 17.)

---

[1] See 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . . After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . . [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

Respondents argue that § 1225(b)(2)(A), not § 1226(a), applies to Malih because he "entered the United States without inspection or parole" and thus remains "an 'applicant for admission' who is treated, for constitutional purposes, as if stopped at the border." (ECF No. 10 at PageID 44.)  As a result, they assert that "he is subject to mandatory detention and not entitled to a bond hearing." (Id.)  They incorporate by reference their statutory arguments from previous cases such as Godinez-Lopez, 2025 WL 3047889. (Id. at PageID 44–45.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondents' contention that Malih is "seeking admission." Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The title of § 1226(a) is "Apprehension and detention of aliens." Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the meaning of a statute." Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified). Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal" proceedings. But Malih was not "arriving" when he was detained far away from the United States border, after having been in this country for over two years. (ECF No. 7 at PageID 25.)  Also, the record does not show that he was eligible for expedited removal proceedings. Thus, the mandatory detention provision of § 1225 does not apply to him.

Further, the subject matter of § 1225 undercuts Respondents' reading of the statute. Section 1225 describes the process of inspecting and removing immigrants actively crossing the border. See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."). And Respondents' reading of § 1225(b)(2)(A) ignores several words and phrases within the statute

7

itself.  "If possible, every word and every provision is to be given effect."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012).  But to apply § 1225(b)(2)(A) to Malih would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the <u>examining immigration officer</u> determines that an alien <u>seeking</u> admission is <u>not clearly and beyond a doubt entitled to be admitted</u>, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The record does not show that Malih was seeking admission at the time of his detention, and nor does it show that he had received a determination by an immigration officer that he was "not clearly and beyond a doubt entitled to be admitted."  The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for over two years.  To interpret "alien seeking admission" using its ordinary meaning but outside the context of the provision, as argued by Respondent, is untenable.

Also, Respondents' interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous.  That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond.  Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained.  8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .").  But, under Respondents' reading of § 1225, all arrested noncitizens must be detained without bond.  Thus, § 1226(c) would have no purpose.  Yet, courts must "give effect, if possible, to every clause and word of a statute."  Duncan v. Walker, 533 U.S. 167, 174 (2001).  Malih's reading of the statute is the only

8

one compatible with the presence of § 1226(c).  What is more, Malih has no criminal record in the United States, so this mandatory detention provision cannot conceivably be applied to him. See § 1226(c)(1)(E)(ii).

The plain language of § 1226(a) describes Malih's situation.  That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Malih was charged with being removable and detained in West Tennessee.  Thus, the Attorney General has discretion under this section.  She "may continue to detain [him]" or she "may release [him] on bond."  (Id.)  But the Attorney General may not deny him the bond hearing to which he is entitled.  See 8 C.F.R. § 1236.1(c)(8), (d)(1).

Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in Malih's favor, but the Congressional intent behind § 1226(a) is also supportive.  In 2025, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with criminal histories from receiving bond.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  Congress would not have added exceptions to the broad rule of § 1226(a) if, as Respondents assert, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases.  See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally.  In fact, it proves the opposite.").  On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025.  After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless."  Lopez-Campos, 2025 WL

9

2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025)).

Finally, Respondents point to a recent Fifth Circuit opinion which reached an opposite conclusion on these issues. (ECF No. 10 at PageID 44–45 (citing Buenrostro-Mendez, 166 F.4th 494).) Particularly relevant to Malih's arguments, the Buenrostro-Mendez court found that "seeking admission" is equivalent to being an "applicant for admission." 166 F.4th at 502–06. As a result, the Fifth Circuit held that all those who have crossed the border unlawfully fall under § 1225, not § 1226, and thus are ineligible for bond hearings. Id. at 508.

Buenrostro-Mendez does not bind this Court, and its reasoning is not persuasive here. First, because it conflates the terms "seeking admission" with "applicant for admission," it renders the two phrases redundant. The canon against surplusage, and common sense, dictate that these terms should have different meanings because the statute includes them both in the same provisions and even in the same sentences. See Buenrostro-Mendez, 166 F.4th at 510 (Douglas, J., dissenting) (quoting Scalia & Garner, supra, at 170). Second, the holding in Buenrostro-Mendez makes superfluous the existence of § 1226(c)(1), a part of the Laken Riley Act, which lists certain crimes that render an applicant ineligible for a bond hearing. If a criminal record makes a bond hearing impossible, it makes little sense that all bond hearings for unlawful entrants are impossible. See Buenrostro-Mendez, 166 F.4th at 512 (Douglas, J., dissenting).

Thus, given the plain language of §§ 1225 and 1226, the arrest and detention of an illegal immigrant who has been continuously present in the United States for over two years is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

10

**II.     Due Process**

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)." Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen. See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020). Those factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

Malih argues that Respondents violated the Due Process Clause of the Fifth Amendment by detaining him without a bond hearing. (ECF No. 1 at PageID 6.) Respondents, however, assert that Malih's due process rights were not violated because, without a lawful entry, he should be "'treated' for due process purposes 'as if stopped at the border.'" (ECF No. 10 at PageID 46 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)).)

Here, because § 1226(a) applies to Malih, he is owed the process given to him under that statute. As for the Mathews factors, (1) Malih has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and, (3) given Malih's clean criminal record, it will be difficult for the Government to demonstrate an interest in his detention. Indeed, before he was apprehended, Malih was present in the United States for over two years, is employed, has family ties in Memphis, and is

11

awaiting an asylum determination. (ECF No. 7 at PageID 25–27.) These facts indicate his ties to the United States, his desire to remain, and his expectation that he would remain free from government custody.

As a result, his detention without bond violated his liberty interest, which cannot be casually tossed aside. Thus, Malih is entitled to immediate release. See Villafranca Lara v. Ladwig, No. 26-CV-02079-SHL-tmp, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [petitioner] under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a)."). Accordingly, his detention under the mandatory detention framework of § 1225(b)(2)(A) violates his due process rights. Thus, consistent with the Court's decision in Godinez-Lopez, and after consideration of the record, Malih's petition is **GRANTED**.[2]

## CONCLUSION

For the reasons stated above, the Petition is **GRANTED**. Respondents are ordered to release Malih immediately. Respondents are **ENJOINED** from pursuing Malih's detention under 8 U.S.C. § 1225(b)(2)(A). Respondents are further **ORDERED** to file a Status Report with this Court on or before March 13, 2026, to certify compliance with this Order.

**IT IS SO ORDERED,** this 9th day of March, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Because the Petition is granted on other grounds, the Court need not reach the questions of whether Malih's detention violated the Fourth or Eighth Amendments.